```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
IVELISSE SANTANA,                                   :
                                                    :      19 Civ. 3773 (PAE)
                                  Plaintiff,        :
                                                    :      OPINION & ORDER
                -v-                                 :
                                                    :
CAVALRY PORTFOLIO SERVICES, LLC,                    :
                                                    :
                                  Defendant.        :
                                                    :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

This case involves alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"), stemming from the use of an allegedly confusing form letter sent by defendant Cavalry Portfolio Services, LLC ("Cavalry"), in its attempt to collect a debt owed by plaintiff Ivelisse Santana.

The immediate issue before the Court involves the pending of a parallel, earlier-filed lawsuit. Four days before Santana initiated this action, a plaintiff in the Eastern District of New York filed a putative class action lawsuit on behalf of all persons similarly situated in the State of New York against Cavalry, alleging identical violations of the FDCPA stemming from the use of the same form letter.

Before the Court is Cavalry's motion to dismiss. Cavalry argues that the first-filed rule requires dismissal of Santana's complaint because the parties, claims, and relief are substantially similar to those first asserted in the Eastern District of New York lawsuit. Alternatively, Calvary argues, if the Court does not dismiss Santana's complaint, it should stay or transfer this case.

For the reasons that follow, the Court stays this litigation.

I.   **Background**

   A.   **Factual Background**[1]

   1.   **The Parties**

Santana is a citizen of New York who resides in Bronx County, New York. Compl. ¶ 5. Cavalry is a New York Limited Liability Company with its principal place of business in Westchester County, New York. *Id.* ¶ 8. Santana alleges that Cavalry regularly attempts, for profit, to collect debts asserted to be owed to others, including debts allegedly owed by consumers. *Id.* ¶¶ 9–11.

   2.   **The Debt Collection**

Santana's allegations stem from Cavalry's attempts to collect a debt that she purportedly owed. According to Santana, the debt at issue arose from transactions she entered primarily for personal, family, or household purposes, and not in connection with any business. *Id.* ¶¶ 25–27.[2] Santana alleges that Cavalry acquired the debt via assignment or other transfer. *Id.* ¶ 30. In an effort to collect the debt, Cavalry sent an allegedly confusing form letter dated May 1, 2018, to

---

[1] The facts are drawn primarily from the Complaint, Dkt. 1 ("Compl."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court has also taken judicial notice of certain court filings from the United States District Court for the Eastern District of New York, which Cavalry attached to its memorandum in support of its motion to dismiss, Dkts. 13-2–5, 13-7. The Court considers these filings "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992)); *see also, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.") (emphasis omitted).

[2] The Complaint does not provide further information regarding the nature of the debt Santana allegedly owed.

Santana, conveying information regarding the debt. *Id.* ¶¶ 30–32. This letter was the first written communication Santana received from Cavalry. *Id.* ¶ 34.

Santana alleges that the form letter failed accurately to convey unambiguously, from the perspective of an unsophisticated consumer, the actual amount of the debt she owed, in violation of the FDCPA. *Id.* ¶¶ 36–41. In particular, she alleges, the letter states that "[t]he amount you owe is the amount stated at the top of this letter as Outstanding Balance," but the letter does not, in fact, anywhere designate an amount as the "Outstanding Balance." *Id.* ¶¶ 42–44. The letter also, she states, "buries" within its text a statutorily required notice of the debtor's right to dispute the alleged debt. *Id.* ¶ 66. Additionally, Santana alleges that Cavalry falsely invoked the threat of reporting information about the debt to credit reporting agencies without, in fact, ever intending to take such action. *Id.* ¶¶ 94–96.

### B. The *Wallace* Litigation

On April 25, 2019, four days before Santana initiated this action, Zakema T. Wallace initiated a putative class action lawsuit against Cavalry in the Eastern District of New York for violations of the FDCPA. *See* Dkt. 13-2 ("*Wallace* Compl."); *see generally Wallace v. Cavalry Portfolio Servs., LLC*, No. 19 Civ. 2425 (DLI) (JO) (E.D.N.Y. 2019) (the "*Wallace* Action"). Wallace, represented by the same counsel as Santana, seeks to certify a class consisting of all consumers in the State of New York to whom Cavalry sent a similar form collection letter within one year prior to the date of filing the *Wallace* Action. *Wallace* Compl. ¶¶ 101–02.

Wallace's lawsuit alleged FDCPA violations nearly identical to the ones Santana alleges here. *See* Dkt. 13-6 (comparing *Wallace* and *Santana* Complaints, paragraph by paragraph); *see generally* Dkt. 13-1 ¶¶ 10–12. Like Santana, Wallace alleged that Cavalry violated the FDCPA in that its form letter does not make clear the amount owed, the statutorily required notice of the

debtor's rights is buried within text of the letter, and Cavalry threatened to report information about Wallace's debt to credit reporting agencies despite having no intent to do so.  *See Wallace* Compl. ¶¶ 42–44, 57–89, 94–96.

### C. Procedural History

On April 29, 2019, Santana filed the Complaint against Cavalry, asserting claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.  Compl.  On July 24, 2019, Cavalry filed its motion to dismiss on account of the first-filed doctrine, Dkt. 13, and its brief in support, Dkt. 13-1 ("Def. Mem.").  On October 14, 2019, Santana filed its opposition. Dkt. 23 ("Pl. Mem.").  On October 28, 2019, Cavalry filed its reply.  Dkt. 24.

## II. Applicable Legal Standards

### 1. Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.  Although the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

### 2. The First-Filed Rule

The first-filed rule provides that "[w]here there are two competing lawsuits, the first suit should have priority."  *N.Y. Marine and Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 112

(2d Cir. 2010) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)); *see City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) ("where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court," the first court has priority "unless there are special circumstances which justify giving priority to the second action"). The doctrine serves to "avoid duplication of judicial effort, to avoid vexatious litigation in multiple forums, to achieve comprehensive disposition of litigation among parties over related issues, and to eliminate the risk of inconsistent judgments." *Fleet Capital Corp. v. Mullins,* No. 03 Civ. 6660 (RJH), 2004 WL 548240, at *4 (S.D.N.Y. Mar. 18, 2004). Because parties "'should be free from the vexation of concurrent litigation over the same subject matter,' there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit." *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751 (PAE), 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (quoting *Adam v. Jacobs,* 950 F.2d 89, 93 (2d Cir. 1991)).

For the first-filed rule to apply, the parties and issues must be substantially similar, but they need not be identical. *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 441 (S.D.N.Y. 2001); *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013). In determining whether to apply the first-filed doctrine, "the court considers whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts." *Castillo*, 960 F. Supp. 2d at 404. The rule operates based on the date of the suits' filing, not on the date of service. *See Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 (S.D.N.Y. 2004).

In this Circuit, only two "special circumstances" will defeat the strong presumption in favor of application of the first-filed rule. *N.Y. Marine*, 599 F.3d at 112 (quoting *Emp'rs. Ins. of*

5

*Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 276 (2d Cir. 2008)). First, courts do not apply the first-filed rule where there has been "manipulative or deceptive behavior on the part of the first-filing plaintiff." *Id.* Second, courts in this Circuit generally will not apply the rule where the "balance of convenience favors the second-filed action." *Id.* Courts determine the "balance of convenience" by considering the same factors considered in connection with motions to transfer venue:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*Emp'rs. Ins. of Wausau*, 522 F.3d at 275. "The party seeking to deviate from the rule must demonstrate that circumstances justifying an exception exist, and it is within the trial court's discretion to determine if a departure is warranted." *Pharm. Res., Inc. v. Alpharma USPD, Inc.*, No. 02 Civ. 1015 (LMM), 2002 WL 987299, at *2 (S.D.N.Y. May 13, 2002); *see also Oleg Cassini*, 2012 WL 844284, at *8 ("The proponent of the second-filed suit has the burden of demonstrating that the *overall* balance of conveniences weighs in favor of its chosen forum in order to establish this exception to the presumption favoring the first-filed action.").

### III. Discussion

Cavalry argues that this action should be dismissed or transferred pursuant to the first-filed rule on account of the earlier-filed *Wallace* Action. Santana contends that her case is not similar to the *Wallace* Action, and thus the first-filed rule is not applicable.

#### A. The First-Filed Rule Applies

The *Wallace* Action is substantially similar to the present suit.

First, the two actions have similar claims; indeed, the complaints in each lawsuit are virtually identical. *See* Dkt. 13-6. Each action arises from Cavalry's use of the same form letter.

6

Santana brings the same three claims against Cavalry in this suit as Wallace brought in the *Wallace* Action. *Compare* Compl. ¶¶ 42–44, 57–89, 94–96, *with Wallace* Compl. ¶¶ 42–44, 57–89, 94–96. As Cavalry notes, the only real distinction is that the *Wallace* Complaint includes putative class allegations, while Santana's does not. However, the claims in the two cases need not be identical for the rule to apply. "Rather, the core question is whether there are common violations of law alleged." *Liberty Mut. Ins. Co. v. Fairbanks*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Clearly, here, there are.

The two actions also involve substantially similar parties. In each action, Cavalry is the sole defendant. The plaintiff in the *Wallace* Action seeks to lead a class consisting of "[a]ll consumers to whom [Cavalry] sent a collection letter substantially and materially similar to the letter sent to [p]laintiff, which letter was sent on or after a date one year prior to the filing of this action to the present." *Wallace* Compl. ¶ 102. On the face of her complaint, Santana fits squarely within this class.

Santana counters that the parties in the two actions must either be identical in both actions or, in the case of a putative class action, the class must be certified for the parties to be considered similar. However, in this Circuit, the first-filed rule applies where the competing litigations involve merely *similar* issues and parties. *See, e.g.*, *Oleg Cassini*, 2012 WL 844284, at *3 ("For the rule to apply, the claims, parties, and available relief must not significantly differ between the actions. However, the issues need not be identical, and the named parties need not be entirely the same." (internal quotation marks and citation omitted)); *Thomas v. Apple-Metro, Inc.*, No. 14 Civ. 4120 (VEC), 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015) (collecting cases). That a first-filed class action has not yet reached the class certification stage does not prevent application of the first-filed rule. *See, e.g.*, *Baatz v. Columbia Gas Transmission, LLC*,

814 F.3d 785, 790 (6th Cir. 2016) (first-filed rule applies when "there is substantial overlap with the putative class even though the class has not yet been certified"); *cf. Bukhari v. Deloitte & Touche LLP*, No. 12 Civ. 4290 (PAE), 2012 WL 5904815, at *4 (S.D.N.Y. 2012) (declining to apply first-filed rule only after finding that "there are no common legal claims between this case and *Berndt* . . . [and] the putative classes in *Berndt* and in this case do not overlap").

Santana's assertion that the only similarity between her case and the *Wallace* Action is that the plaintiffs are represented by the same counsel blinks reality. The claims and parties in each case are not only substantially similar—the complaints are nearly identical. "There is simply no reason for this Court to decide nearly identical questions of law and fact as those now being adjudicated in the Eastern District . . . with regard to the same requested relief, the same Defendants and the same class of plaintiffs." *See Thomas*, 2015 WL 505384, at *4.

Further, no special circumstances defeat the application of the first-filed rule here. Santana bears the burden of demonstrating that "circumstances justifying an exception [to the first-filed rule] exist." *Pharm. Res., Inc.*, 2002 WL 987299, at *2; *see also Oleg Cassini*, 2012 WL 844284, at *8 (same). Santana, however, has not responded at all to Cavalry's argument that no special circumstances exist here, much less carried her burden on that point. *See, e.g.*, *W. Bulk Carriers KS v. Centauri Shipping Ltd.*, No. 11 Civ. 5952 (RJS), 2013 WL 1385212, at *4 n.4 (S.D.N.Y. Mar. 11, 2013) ("[A] party 'concedes through silence' arguments by its opponent that it fails to address." (quoting *In re UBS AG Secs. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012))); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392–393 & n.116 (S.D.N.Y. 2002) (considering argument not addressed in opposition brief waived). For the avoidance of doubt, however, the Court finds that: (i) there has been no manipulative behavior on the part of the first-filing plaintiff that would

justify an exception, given that plaintiffs in each action are represented by the same counsel; and (ii) the balance of conveniences does not tip in Santana's favor, because the first-filed case is proceeding in a federal court in such close proximity to this one and a second-filing plaintiff's choice of forum "is not entitled to substantial weight," *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 249 (E.D.N.Y. 2012). The first-filed rule, therefore, applies in full force here.

B.  **A Stay Is Warranted**

Where the first-filed rule applies, a court may dismiss the second-filed case, transfer it to the first-filed district, or stay the second case pending resolution of the first-filed case. *Thomas*, 2015 WL 505384, at *2; *see Adam*, 950 F.2d at 93 ("Under the first-filed rule, a district court is vested with broad discretion to dismiss, stay, or transfer a suit that is found to be duplicative of a previously filed action."). In determining which remedy is proper, a court must consider the goals of the doctrine—to "avoid duplication of judicial effort . . . and eliminate the risk of inconsistent adjudication." *Regions Bank*, 170 F. Supp. 2d at 439 (citations omitted).

A stay of litigation represents a better-tailored resolution than transfer or dismissal here. Although the parties did not address the issue in their briefing, transfer to the first-filed district may not be an appropriate disposition where, as here, plaintiff and defendant each reside in this district, and a substantial portion of the events giving rise to the claim occurred here. *See* 28 U.S.C. § 1391. Cavalry has not supplied a basis on which the Court could conclude that Santana's case could have been brought in the Eastern District of New York in the first place. *See id.* §§ 1391, 1404.

Cavalry argues that dismissal of Santana's claim is the proper application of the first-filed rule here. Cavalry argues that such an outcome leaves Santana with her claims and options intact. *See* Def. Mem. at 12–13. Specifically, Calvary notes, if the putative class in the *Wallace*

9

Action—of which Santana undisputedly would be a member—is certified and succeeds in litigation on the merits, Santana would be able to recover statutory damages under the FDCPA in her capacity as a class member, just as she seeks here as an individual plaintiff.³ *See* 15 U.S.C. § 1692k(a)(2). And, if the *Wallace* class were certified and resulted in a class settlement with which Santana was dissatisfied, Santana would be able to opt out or object. Fed. R. Civ. P. 23(c)(2)(b), (e)(4)–(5). Alternatively, Calvary notes, if the class were not certified, Santana's individual claim would survive and would have been tolled for as long as the *Wallace* Action endured as a putative class action, and Santana could then pursue an individual action such as the one here. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806–07 (2018) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)).

Calvary's central point is correct—that there is no good reason for both the *Wallace* litigation and Santana's later-filed lawsuit to proceed forward in tandem on the merits. Such would be wasteful and non-productive. Indeed, the "needless multiplicity of actions filed by class members" is "precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Id.* at 1806 (internal quotation marks and citation omitted).

As between stay or dismissal, however, Calvary overreaches. Had Santana brought class claims tracking those brought in *Wallace*, dismissal of her putative class allegations would be appropriate. *See Castillo*, 960 F. Supp. 2d at 405 (dismissing second-filed class claims and directing plaintiff to advise whether he intended to pursue individual claims or opt into the class); *Thomas*, 2015 WL 505384, at *5 (same). However, because Santana brings only

---

³ Indeed, Santana's own counsel has argued in the *Wallace* case that—with regard to claims against Cavalry for use of its form letter—"[a] class action is superior to other available methods for the fair and efficient adjudication of this controversy." *Wallace* Compl. ¶ 105.

10

individual claims, a stay of this lawsuit pending resolution of the putative class claims in the *Wallace* Action is a better-tailored solution than dismissal here. *See Thomas*, 2015 WL 505384, at *5 ("In the event that Plaintiff wishes to pursue her individual claims before this Court, her case will be stayed pending resolution of the [first-filed class actions]."). Among other virtues, in the event that a class is not certified in that litigation or that Santana opts out of a certified class, the Court would need only to lift the stay here for her individual claim to proceed.

Given the nearly identical claims, parties, facts, and law at issue here and in the *Wallace* Action, as well as Santana's representation by the same counsel as the putative class counsel in *Wallace*, the first-filed rule clearly applies. A stay of this case will fulfill the doctrine's goals of achieving fairness and comprehensive disposition of litigation while avoiding inconsistent adjudications and duplication of judicial effort and other inefficiencies.

## CONCLUSION

For the foregoing reasons, the Court grants Cavalry's motion insofar as it seeks a stay of litigation as an alternative form of relief. The Court denies Cavalry's motion insofar as it seeks outright dismissal of Santana's complaint.

The Court directs the parties to submit a joint letter updating the Court as to the status of the *Wallace* Action in 60 days, and every 60 days thereafter. The Court further directs the parties to submit a joint status letter within 10 days of resolution of any class certification motion or any settlement in *Wallace*.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 13 and to stay this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 19, 2019
 New York, New York